ATTORNEYS FOR FREEDOM LAW FIRM
1003 Bishop St., Ste. 1260
Honolulu, HI 96813
Phone: (808) 647-2423
Fax (480) 857-0150
Marc J. Victor – Haw. Bar. No. 011090
Marc@AttorneysForFreedom.com
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FOR OUR RIGHTS, a Hawaiʻi Corporation, et al., | Civil No.  1:20-cv-00268 |
| Plaintiffs, | **AMENDED COMPLAINT** |
| vs. | |
| DAVID IGE, in his official capacity as Governor of the State of Hawaiʻi, CLARE E. CONNORS, in her official capacity as Attorney General for the State of Hawaiʻi, and STATE OF HAWAIʻI, | |
| Defendants. | |

Plaintiffs, by and through their attorneys, allege the facts and causes of action against Defendants as set forth in this Amended Complaint.

### JURY DEMAND

Plaintiffs and each of them request a jury trial on all issues as applicable under law.

### INTRODUCTION

1. This case is a federal civil rights action, brought pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the Hawaiʻi Governor's Proclamation Related to the Covid-

19 Emergency and several supplemental proclamations and executive orders, as described more fully below, with copies of the most pertinent documents attached here as exhibits.

2. Plaintiffs are citizens and residents in the State of Hawaiʻi who are subject to the Governor's proclamations and executive orders.

3. The Governor's proclamations and executive orders, as alleged more fully below, violate Plaintiffs' fundamental right to interstate travel, fundamental right to movement, and fundamental right to liberty, and fundamental right to due process, under the Constitution of the United States and the Constitution of the State of Hawaiʻi.

4. The Governor's proclamations and executive orders, as alleged more fully below, are contrary to law and unconstitutional under the Constitution of the State of Hawaiʻi.

5. As the violations of the Plaintiffs' rights are current, ongoing and prospective in the near term, preliminary and permanent injunctive and declaratory relief against the proclamations and executive orders are warranted.

6. The current Supplementary Proclamation issued by the Governor's went into effect on June 10, 2020.

7. Therefore, preliminary injunctive relief is needed immediately in order to prevent irreparable harm to the rights of Plaintiffs.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202; and costs and attorney's fees under 42 U.S.C. § 1988.  This Court has supplemental jurisdiction over Plaintiffs' state claims under 28 U.S.C. § 1367.  The state law claims in this Amended Complaint are

founded upon and arise under, *inter alia*, Article I, Sections 2, 5 and 8, and Article V, Section 5 of the Constitution of the State of Hawaiʻi.

9. Venue lies in the United States District Court for the District of Hawaiʻi pursuant to 28 U.S.C. § 1391(b). A substantial part of the actions or omissions giving rise to this case occurred within the District, and at least one Defendant resides in this District.

**THE PARTIES**

10. Plaintiffs are all residents on the islands of Kauai and Hawaiʻi in the State of Hawaiʻi:

(a) FOR OUR RIGHTS, a Hawaiʻi corporation, P.O. Box 806, Kalaheo, Kalaheo, HI;

(b) Misty Cluett & Eric Cluett;

(c) Diana Lomma;

(d) David R. Hamman & Randi Hamman;

(e) Janet Eisenbach;

(f) Levana Lomma Keikaika;

(g) Michael Miller & Allison Miller;

(h) Lawrence K. Paille;

(i) Geralyn Schulkind & Leonard Schulkind; and

(j)  Daniel Hashimoto.


11. Defendant David Ige is the Governor of the State of Hawaiʻi, and is sued in his official capacity.  He is the chief executive of the State of Hawaiʻi and in that capacity issued the proclamations and supplements and executive orders.  Defendant Governor is responsible for

executing and administering laws, customs, practices, and policies of the State of Hawaiʻi, and is currently enforcing the laws, customs, practices and policies complained of in this action.

12. Defendant State of Hawaiʻi is the governmental entity under whose auspices the other Defendants exercise authority and in whose interest Defendants are expected to act.

13. Defendant Clare E. Connors is the Attorney General for the State of Hawaiʻi and is sued in her official capacity.  She formally approved the proclamations and supplements, and is responsible under the law for enforcing its provisions against entities in violation thereof, including against the Plaintiffs.  Defendant Attorney General is responsible for executing and administering laws, customs, practices, and policies of the State of Hawaiʻi, and is currently enforcing the laws, customs, practices and policies complained of in this action.

## STATEMENT OF FACTS

14. Defendant Governor Ige issued a Proclamation on March 4, 2020 ("March 4 Proclamation") declaring a state of emergency based upon concerns about the spread of Covid-19 virus into Hawaiʻi, suspending some state laws, and imposing other restrictions and directives.  A copy of the Proclamation is attached as Exhibit 1.  The March 4 Proclamation expressly was set to expire on April 29, 2020, or earlier.   The Proclamation was issued upon authority delegated by the legislature via Hawaiʻi Revised Statutes ("H.R.S.") §§ 127A-2,-11,-12, and -14. Under H.R.S. § 127A-14(d): "A state of emergency and a local state of emergency shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency or local state of emergency, respectively, or by a separate proclamation of the governor or mayor, whichever occurs first."  Defendant Governor circumvented the limitation upon his delegated authority, however, by issuing a series of "Supplements" purporting to incorporate the initial Proclamation and extend the period of the state of emergency far beyond

the statutory 60-day limit.  Under the Ninth Supplementary Proclamation, the declared emergency extends to July 31, 2020 – 159 days after the initial Proclamation.  The Governor has exceeded his delegated authority, thus the Proclamation and all of the Supplements and associated Executive Orders should be declared null and void.

15. Each successive Supplement incorporated the initial Proclamation, and most Supplements added additional prohibitions and restrictions upon the people living in, working in, or even visiting in any of the Hawaiian Islands.  The Proclamation and its Supplements invoke the delegated power of H.R.S. § 127A-25 to declare their provisions to have the force and effect of law.  They also invoke the delegated power of H.R.S. § 127A-29 to arrest, prosecute, convict, and punish violations of their provisions as misdemeanors.  After the initial Proclamation's maximum 60-day period had expired on May 3, 2020, however the Governor and any member, agent or employee of the State government no longer held power to arrest, charge, or convict any person of a violation of the Proclamation or any purported Supplement or related Executive Order.  This Court should declare these legal facts to the people of Hawaiʻi and relieve any person of potential criminal liability in accord with such declaration.

16. Plaintiffs are citizens and residents in the State of Hawaiʻi who are subject to the Governor's proclamations and executive orders, and have standing to request this judicial intervention to restrain the Governor and the State from continuing to impose all of the elements of shutdown, in-home detention, self-quarantine, closure of private enterprises, closure of public facilities and publicly-accessible property, and prohibitions and/or restrictions on travel within any of the islands and territory comprising the State of Hawaiʻi.

17. The Governor's Proclamation, the succeeding Supplements, and the associated Executive Orders, all purport to have the force and effect of law, carrying criminal misdemeanor

penalties for violations, when none of these official documents has lawful authority anymore after May 3, 2020.

18. Plaintiffs, like all persons in Hawai'i, are currently suffering the effects of the Governor's Proclamation, Supplements, and associated Executive Orders, and unless relief is granted will continue to so suffer in the near future, perhaps indefinitely. Accordingly, Plaintiffs seek immediate preliminary and permanent injunctive and declaratory relief against the Governor's Proclamation, Supplements and Executive Orders.

19. On March 4, 2020, Defendant Governor issued the March 4 Proclamation, formally approved by Defendant Attorney General.  Exhibit 1.  The March 4 Proclamation declares the findings, determinations, and orders of Defendant Governor.  The March 4 Proclamation reports the identification of the coronavirus Covid-19 by world and national public health entities and political authorities as "a public health emergency of international concern," as a disease that "is highly contagious" and spreading to many nations.  The March 4 Proclamation finds the danger posed by Covid-19 to be "significant so as to warrant preemptive and protective actions in order to provide for the health, safety, and welfare of the people of the State." The March 4 Proclamation determines, based upon the asserted facts in that document, that conditions in Hawai'i were "of such character and magnitude to constitute an emergency or disaster as contemplated by sections 127A-2 and 127A-14, Hawai'i Revised Statutes, that threaten[ed] the State of Hawai'i."  The March 4 Proclamation declares "an Emergency Period for the purpose of authorizing the expenditure of State monies as appropriated for the speedy and efficient protection and relief of the damages, losses, and suffering resulting from the emergency.  The March 4 Proclamation further activated "the Major Disaster Fund" and suspended several provisions of the Hawai'i Revised Statutes, while also activating statutory limits upon price

increases of certain goods and commodities of goods needed by the public "to prepare for, respond to, or use because of the circumstances giving rise to the emergency" that was being proclaimed.  Via the March 4 Proclamation, Defendant Governor thus declared "the disaster emergency relief period shall commence immediately and continue through April 29, 2020, or by a separate proclamation, whichever occurs first."

20. The March 4 Proclamation provided no data indicating the numbers of citizens of Hawaiʻi who had tested positive for exposure to Covid-19, or who had shown symptoms of Covid-19 infection, or who had been hospitalized for or died as a result of Covid-19 infection. The March 4 Proclamation asserted there were "at least 108 confirmed and presumptive positive cases of COVID-19" in the entire United States, but pointed to not one death due to that cause.

21.  On March 16, 2020, Defendant Governor issued his Supplementary Proclamation, approved by Defendant Attorney General, attached here as Exhibit 2, which identified there were in the entire state of Hawaiʻi "ten confirmed cases of COVID-19 as a result of the pandemic." The Supplementary Proclamation anticipated "significant economic impacts, including to rates of employment, are expected in sectors of the state's economy" caused by COVID-19 virus infections.  The Supplementary Proclamation, *inter alia*, engaged state emergency management entities, suspended more state law provisions, expanded "anti-hoarding" measures, and ordered "all residents" to "heed any orders and guidance of federal and state public health officials, including but not limited to … social distancing[.]"  The Supplementary Proclamation extended "the disaster emergency relief period" to "continue through May 15, 2020" unless terminated sooner.

22. The Supplementary Proclamation identified in the entire state of Hawaiʻi no hospitalizations or deaths attributed to Covid-19 infection.  It identified no Covid-19 infection deaths in the entire United States.

23. On March 21, 2020, Defendant Governor issued his Second Supplementary Proclamation ("March 21 Supplement"), approved by Defendant Attorney General, attached here as Exhibit 3. The March 21 Supplement identified no additional Covid-19 cases or any Covid-19 deaths in the entire state of Hawaiʻi, nor any other Covid-19 pandemic facts.  The March 21 Supplement nevertheless asserted "it has become necessary to supplement the [March 4 Proclamation and the Supplementary Proclamation] relating to the COVID-19 emergency, which continues to endanger the health, safety, and welfare of the people of Hawaiʻi[.]"

24.  In addition, the March 21 Supplement issued an order, hereinafter referred to as "the Self-Quarantine Order," under which:

> all persons entering the State of Hawaiʻi shall be subject to mandatory self-quarantine, except those persons performing emergency response or critical infrastructure functions who have been exempted by the Director of Emergency Management. The period of self-quarantine shall begin from the time of entry into the State of Hawaiʻi and shall last 14 days or the duration of the person's presence in the State of Hawaiʻi, whichever is shorter.

25. Attached and incorporated with the March 21 Supplement are "Rules Relating to Covid-19," which spell out the restrictions upon persons entering Hawaiʻi.

26. Defendant Governor issued on March 21, 2020, Executive Order No. 502, which declares in relevant part: "Pursuant to section 127A-29, HRS, any person violating the rules relating to quarantine shall be guilty of a misdemeanor, and upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both."  HRS § 127A-29 defines a strict liability crime, lacking a requirement of proof of mental state.

27. The effects of the Self-Quarantine Order penalized any person who came to the State of Hawai'i, unless that person fell within the narrow exempt categories.  Per the March 21 Supplement and the Order, there were no defenses to their threatened misdemeanor prosecution, and no indication of penalty-mitigating factors available.  This Supplement and Order provided no exceptions for permanent residents or citizens of the State of Hawai'i who would need to travel to another State for urgent medical, urgent business or financial matters, or family emergency reasons, and then return home to their Hawai'i residence.

28. The Self-Quarantine Order effectively prevented tourist visitors to any and all of the Hawaiian islands because it imposed a 14-day quarantine upon every visitor's arrival: (a) every visitor had to identify to authorities the location of self-quarantine and then (b) "remain within the confines of the quarantine location" for 14 days.

29. The Self-Quarantine Order imposed by the March 21 Supplement contend its legal authority rested upon H.R.S. § 127A-13(a)(1), which provides for:

> the quarantine or segregation of persons who are affected with or believed to have been exposed to any infectious, communicable, or other disease that is, in the governor's opinion, dangerous to the public health and safety, or persons who are the source of other contamination, in any case where, in the governor's opinion, the existing laws are not adequate to assure the public health and safety…

30. Neither the March 4 Proclamation, the Supplementary Proclamation, nor the March 21 Supplement provides any factual information to show: (a) which "persons" were "affected with" Covid-19; or (b) which "persons" were "believed to have been exposed to" Covid-19; or (c) which persons "who are the source of other contamination."

31. The March 21 Supplement including the Self-Quarantine Order does not confine its application to "persons who are affected with or believed to have been exposed to any infectious, communicable, or other disease," or to persons "who are the source of other contamination."

32. On March 23, 2020, Defendant Governor issued his Third Supplementary Proclamation ("March 23 Supplement"), approved by Defendant Attorney General, attached here as Exhibit 4. The March 23 Supplement indicated a count of "at least 77 documented cases of Covid-19 cases in the State," but no deaths in the State attributed to Covid-19. The March 23 Supplement restates the content and some of the express language of the previous proclamations.

33. The March 23 Supplement orders:

(a) "all persons within the State of Hawaiʻi are ordered to stay at home or in their place of residence except as necessary to maintain continuity of operations of the federal critical infrastructure sectors…. With respect to persons residing in hotels, condominiums, townhomes, apartments, or other multi-unit dwellings, 'place of residence' means the person's individual hotel room or unit. To the extent persons use shared or outdoor spaces when outside their residence, they must comply with the social distancing requirements set forth herein to the fullest extent possible. All persons may leave their home or place of residence only for essential activities or to engage in the essential businesses and operations identified herein.

(b) "Persons may travel to and from the following essential businesses and operations to the extent that such businesses or operations cannot be conducted through remote technology from homes or places of residence." A list of 25 enumerated categories of businesses or operations is supplied in the Supplement.

(c) Travel outside the residence is allowed "for health and safety," to engage in or deal with essential businesses, "engage in minimum basic operations of non-essential businesses, including the minimum necessary activities to maintain the value of the business's inventory, ensure security, process payroll and employee benefits, and related functions" and to facilitate

employees' working remotely at home, "to care for elderly, minors, dependents, persons with disabilities, or other high risk persons," to drive to the airport or other facility to depart from the State, to obey law enforcement or court order(s), while maintaining social distancing to engage in outdoor exercise including surfing and swimming, and to walk "pets on a leash."

34. The March 23 Supplement exempts gatherings of members of a household or residence but otherwise prohibits "any gathering of more than ten people" anywhere in the entire State of Hawai'i.  The Supplement forbids the operation of and directs the closure of "all other places of public gathering, whether indoors or outdoors" in the entire State of Hawai'i.  The Supplement does not confine these prohibitions and directives only to "persons who are affected with or believed to have been exposed to any infectious, communicable, or other disease," or only to environments in which "elderly and high risk" persons live, work, or are frequently found.

35. The March 23 Supplement imposes "Social Distancing Requirements."

36. The March 23 Supplement exempts from nearly all of the Supplement's declared restrictions and prohibitions any person "experiencing homelessness."  A person "experiencing homelessness" … "must comply with the social distancing requirements to the fullest extent possible."

37. The March 23 Supplement declares any intentional or knowing violation of its restrictions, mandates, and prohibitions would result in misdemeanor conviction and penalties of up to a year in prison and a $5,000, or both.

38. On March 31, 2020, Defendant Governor issued his Fourth Supplementary Proclamation ("March 31 Supplement"), approved by Defendant Attorney General, attached here as Exhibit 5. The March 31 Supplement indicated a count of "approximately 230 documented

cases of Covid-19 cases in the State," but no deaths in the State attributed to Covid-19.  The March 31 Supplement restates the content and some of the express language of the previous proclamations.

39. The March 31 Supplement expanded the Self-Quarantine Order, described above, to any travel between any of the islands in the State of Hawaiʻi.  The Supplement carved an exception for persons traveling between islands for purposes related to medical or health care, so long as such persons wear "appropriate protective gear and follow the social distancing requirements" previously proclaimed.  The Supplement carved a limited exception for inter-island travelers performing "functions necessary to maintain continuity of operations of the federal critical infrastructure sectors," subjecting such travelers to lesser requirements.

40. The March 31 Supplement omits the criminal mental state requirement previously stated in some portions of prior proclamations.  The March 31 Supplement states:

> Pursuant to section 127A-29, HRS, any person violating any rule relating to quarantine shall be guilty of a misdemeanor, and upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both.

The cited relevant language of HRS § 127A-29 defines a strict liability crime, lacking a requirement of proof of mental state:

> Any person violating any rule of the governor or mayor prescribed and promulgated pursuant to this chapter and having the force and effect of law, shall, if it shall be so stated in the rule, be guilty of a misdemeanor.  Upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both.

41. The March 31 Supplement does not confine its prohibitions and directives only to "persons who are affected with or believed to have been exposed to any infectious,

12

communicable, or other disease," or only to environments in which "elderly and high risk" persons live, work, or are frequently found.

42. The March 31 Supplement expanded the effects of the Self-Quarantine Order to penalize any person who sought to travel intrastate, i.e., between any two of islands within the State of Hawaiʻi, regardless of whether the island even has a permanent population of human beings, unless that person fell within the medical care and federal infrastructure categories.

43. The March 31 Supplement exacerbated the effects of the Self-Quarantine Order to effectively prevent tourist visitors to any and all of the Hawaiian Islands because it imposed the Self-Quarantine Order requirements upon every visitor's intra-island movement.

44. On April 16, 2020, Defendant Governor issued his Fifth Supplementary Proclamation ("April 16 Supplement"), approved by Defendant Attorney General, attached here as Exhibit 6. The April 16 Supplement indicated a count of "more than 540 documented cases of Covid-19 cases in the State" and "nine deaths attributed to his disease." The April 16 Supplement restates the content and some of the express language of the previous proclamations.  The April 16 Supplement purports to extend the "disaster emergency relief period … through April 30, 2020," unless otherwise modified.

45.  The April 16 Supplement declares "Enhanced Social Distancing Requirements. First, to that end, the April 16 Supplement declares "All persons are encouraged to wear a cloth face covering as described and recommended by the CDC," and provides a citation and link to a CDC publication about cloth face coverings.

46. The April 16 Supplement declares additional sweeping restrictions and prohibitions, however, including: beach closures, boating restrictions, hiking restrictions, fishing and gathering limitations, extensive customer and employee distancing and masking mandates

13

counting as "Essential Business and Operations Requirements."  The April 16 Supplement does not provide citations or links to any WHO, CDC, or any other authoritative source that recommends all of the declared restrictions or prohibits, let alone mandates them.  Several of the Supplement's sweeping mandates lack a known scientific basis.

47. The April 16 Supplement declares: "Pursuant to section 127A-29, HRS, any person violating any rule set forth in this Proclamation shall be guilty of a misdemeanor[.]"  As noted above, HRS § 127A-29 defines a strict liability crime, lacking a requirement of proof of mental state.  The Supplement thus affixes criminal misdemeanor liability upon a person who violates any provision in the Supplement, for example, by sitting or standing "on any state beach in Hawaiʻi," without proof of negligence, recklessness, knowledge, or intentionality.

48. On April 25, 2020, Defendant Governor issued his Sixth Supplementary Proclamation ("April 25 Supplement"), approved by Defendant Attorney General.  A copy of this Supplement is available at https://governor.hawaii.gov/wp-content/uploads/2020/04/2004144-ATG_Sixth-Supplementary-Proclamation-for-COVID-19-distribution-signed.pdf .  The April 25 Supplement indicated a count of "more than 600 documented cases of Covid-19 cases in the State" and "14 deaths attributed to his disease." The April 25 Supplement amends and restates the content and some of the express language of the previous proclamations.  The April 25 Supplement purports to extend the "disaster emergency relief period … through May 31, 2020," unless otherwise modified.  The April 25 Supplement maintains the "stay at home" order of the March 23 Supplement.

49. On May 5, 2020, Defendant Governor issued his Seventh Supplementary Proclamation ("May 5 Supplement"), approved by Defendant Attorney General.  A copy of this Supplement is available at https://governor.hawaii.gov/wp-content/uploads/2020/05/2005024-

ATG_Seventh-Supplementary-Proclamation-for-COVID-19-distribution-signed-1.pdf.  The May 5 Supplement indicated a count of "625 documented cases of Covid-19 cases in the State" and "17 deaths attributed to this disease." The May 5 Supplement restates the content and some of the express language of the previous proclamations.  The May 5 Supplement purports to extend the "disaster emergency relief period … through May 31, 2020," unless otherwise modified.  The May 5 Supplement maintains the "stay at home" order of the March 23 Supplement.

50. On May 18, 2020, Defendant Governor issued his Eighth Supplementary Proclamation ("May 18 Supplement"), approved by Defendant Attorney General.  A copy of this Supplement is attached as Exhibit 7.  The May 18 Supplement indicated a count of "640 documented cases of Covid-19 cases in the State" and "17 deaths attributed to his disease." The May 18 Supplement purports to amend and restate "all prior proclamations." The May 18 Supplement purports to extend the "disaster emergency relief period … through June 30, 2020," unless otherwise modified.  The May 18 Supplement maintains the "stay at home" order of the March 23 Supplement.

51. The May 18 Supplement proclaims new "Rules Relating to Safety Guidelines for Barbers and Beauty Operations."

52. The May 18 Supplement in three places declares the criminal penalties to be imposed for violations of the Supplement's orders as follow:

(a) Section III, entitled "Act with Care," declares, inter alia, which businesses and functions in Hawaiʻi may operate or take place, which activities outside a person's place of residence are permitted or prohibited for a person to engage in, and the extent and techniques of social distancing requirements.  On page 13, section III(F), it states:

> any person who intentionally or knowingly violates any provision set forth in this
> Section III shall be guilty of a misdemeanor, and upon conviction, the person

shall be fined not more than $5,000, or imprisoned not more than one year, or both.

(b) Section IV, entitled "All Persons Traveling to the State or Traveling Inter-Island," declares the "mandatory self-quarantine" rules, previously declared in the March 21 Supplement and identified herein as Self-Quarantine Rules.  On page 15, section IV(C), it states:

> all provisions set forth in Section IV of this Proclamation and the Rules Relating to COVID-19 Travel Quarantine, Exhibit D attached hereto, are hereby adopted as rules and shall have the force and effect of law. (These rules are hereinafter referred to as the "Travel Quarantine Rules").

On the same page, it further states:

> Pursuant to section 127A-29, HRS, any person who intentionally or knowingly violates the Travel Quarantine Rules shall be guilty of a misdemeanor, and upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both.

(c)  The "Exhibit D" referenced in Section IV(C) is the document entitled "Rules Relating to COVID-19 Travel Quarantine."  In this "Exhibit D" it states:

> §4.  Criminal Penalties. (a) Any person violating any of these rules shall be guilty of a misdemeanor and upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both.

53. Although Defendant Governor issued prior Executive Orders related to and in conjunction with the prior proclamations, the May 18 Supplement expressly restates Executive Order No. 20-05 as the Order currently in effect.  This Order is supplied as "Exhibit A" to the May 18 Supplement.  The May 18 Supplement reiterates the order that all persons in the State of Hawaiʻi must stay at home unless an enumerated exception applies.

54. On June 10, 2020, Defendant Governor issued his Ninth Supplementary Proclamation ("June 10 Supplement"), approved by Defendant Attorney General.  A copy of this Supplement

is attached as Exhibit 9.  The June 10 Supplement indicates a count of "685 documented cases of Covid-19 cases in the State" and "17 deaths attributed to this disease." The June 10 Supplement purports to amend and restate "all prior proclamations." The June 10 Supplement purports to extend the "disaster emergency relief period … through July 31, 2020," unless otherwise modified.

55. The June 10 Supplement, Section IV(F), maintains the same "Travel Quarantine Rules" by incorporating "Exhibit D," as did several prior supplementary proclamations.

56. The June 10 Supplement, Section IV(E), imposes a legal duty upon any "car sharing service" provider to verify that any user of such a vehicle is not subject to the mandatory self-quarantine measures of the Supplement.  Any person who "intentionally, knowingly, or recklessly" violates this duty is subject to criminal prosecution and penalties.  Actual ignorance of the vehicle user's mandatory quarantine status is no defense.

57. The June 10 Supplement, Section IV(C), imposes new "host responsibility" duties:

> All hosts of any guest or guests within the State of Hawaiʻi shall be responsible for ensuring their guest or guests abide by the mandatory self quarantine … Any host violates this section if the host intentionally, knowingly, or recklessly fails to notify law enforcement immediately when a guest … subject to the self-quarantine fails to enter or remain within the confines of their designated quarantine location. It shall be the duty of all hosts to ascertain the period of self-quarantine for their guest or guests and to determine whether or not their … guests remain confined to their designated quarantine location throughout the period of self-quarantine. It shall not be a defense to a violation of this section that the host did not know the period of self-quarantine for their …guests, that they did not know that their … guests were subject to the mandatory self quarantine, or that they did not know that their … guests had failed to enter or remain within the confines of the designated quarantine location.

58. The June 10 Supplement, Section IV(B), declares the expiration of inter-island travel mandatory self-quarantine provisions.  The June 10 Supplement does not declare the expiration or repeal of any other existing or prior provision of the Proclamation or supplements, however.

59. The June 10 Supplement, Section IV(F) declares:

all provisions set forth in Section IV of this Proclamation and the Rules Relating to COVID-19 Travel Quarantine, Exhibit D attached hereto, are hereby adopted as rules and shall have the force and effect of law. (These rules are hereinafter referred to as the "Travel Quarantine Rules"). Pursuant to section 127A-29, HRS, any person who intentionally, knowingly, or recklessly violates the Travel Quarantine Rules shall be guilty of a misdemeanor, and upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both.

60. The people of the State of Hawai'i have suffered massive unemployment, loss of business, loss of income, home foreclosures, lease delinquencies, and loss of economic and financial opportunities, in amounts to be drawn from publicly available data when it is made public.

61. Defendant Governor's Proclamation and supplements, including their travel restrictions and quarantine provisions, have directly and indirectly harmed Plaintiffs, as set forth in the Plaintiffs' statements attached as Exhibit 8 to this Amended Complaint and briefly summarized here:

(A)     Christina Cole: anxiety, prevention of travel to see family, lost employment, lost income, lost mental health care, serious emotional distress, depression, isolation from friends, and social exclusion.

(B)     Misty Cluett and Eric Cluett: Direct interference with travel back home to the island, disruption of home life, likely deprivation of opportunity for daughter living out of state to visit, loss of $70,000 or more in revenue to family owned business, and necessity to homeschool 5-year-old son next year.

(C)     Diana Lomma: Physical pain, choking and vomiting caused when EMT forcefully pushed mask onto face, ridicule for not wanting to wear mask, deprivation of outside physical therapy necessary for health conditions, anxiety, stress, deprivation of any visits from daughter while in the hospital for surgery, deprivation of emotional and family support, fear of public humiliation and harassment, denial of freedom to travel to the other islands or on the mainland and move about due to fear of adverse consequences, depression and strong feelings of hopelessness.

(D)     David R. Hamman, Randi Hamman: Heavy financial losses, unemployment of hired family members, likely alienation from family that moves away, serious emotional harm to selves and family.

(E)     Janet Eisenbach: Directly due to inbound travel restrictions and quarantine requirements visitors have stopped coming and thus have destroyed the vacation rental business that provided crucial income, the anxiety and depression resulting from the culture of suspicion and fear, social exclusion, deprivation of the right to use public facilities, even to deprivation of taking grandchildren to an outdoor park, anxiety about losing condominium valued at $400,000, and deprivation of visits from many family members previously planned

(F)     Levana Lomma Keikaika:  Loss of employment, loss of income, depletion of savings just to survive, injury to physical and mental health, depression, social isolation, fear of public harassment, panic attacks, deprivation of visits with family outside of the island, deprivation of AA meeting attendance, the effects of other people's fear, worry, anxiety and depression impacting one's own, fear of losing home and car, and severe anxiety, depression, hopelessness, and suicidal thoughts. Plaintiff Keikaika wrote to Governor Ige on June 4, 2020, presenting her intent to travel and not abide by the self-quarantine; the Office of the Governor

responded within a day via an email emphasizing that criminal penalties would be applied to her if she violated the emergency orders.

(G)    Michael Miller: Drastic losses of financial income from visitor-centered businesses on several Hawaiian Islands, with consequent likely layoffs of employees and rendering business valueless – all due to restrictions on travel and the quarantine provisions.

(H)    Lawrence K. Paille: Destruction of business that provided outdoor experiences for tourists, injury to health by deprivation of right to venture outdoors, a permanent state of stress, depression, and occasional thoughts of suicide.

(I)    Allison Miller: Loss of job, total loss of income, loss of medical benefits, deprivation of right and opportunity to travel to visit family, deprivation of right to attend church and practice faith, suffering social isolation, loss of social activities, and substantial stress on marriage.

(J)  Geralyn and Leonard Schulkind:  Destruction of key source of family income due to curfew, lockdown, and 14-day quarantine, zero income to the couple, facing potential or likely loss of properties to distress sale or foreclosure, substantial emotional distress as senior citizens living in fear of the future.

(K) Danny Hashimoto: Deprivation of right of intrastate travel, freedom of movement, and engaging in social contacts and events.

## FIRST CAUSE OF ACTION

GOVERNOR'S PROCLAMATION IMPOSES BURDENS ON INTERSTATE TRAVEL
THAT VIOLATE THE FUNDAMENTAL CONSTITUTIONAL RIGHTS TO TRAVEL AND
TO DUE PROCESS OF LAW

62. Plaintiffs incorporate all previous paragraphs of this Amended Complaint as if fully stated herein.

63. It is well-established that the United States Constitution's Fourteenth Amendment's Privileges or Immunities Clause enshrines a "constitutional right to travel from one State to another." *Saenz v. Roe*, 526 U.S. 489, 498, 119 S. Ct. 1518 (1999).  The right prohibits laws that "directly impair the exercise of the right to free interstate movement." *Saenz*, 526 U.S. at 501.

64. The constitutional right to interstate travel is applicable to the state and local governments by virtue of its Fourteenth Amendment origin and basis, and by virtue of its having been "a necessary concomitant of the stronger Union the Constitution created."  *Saenz*, 526 U.S. at 501(citation omitted).

65. The federal constitutional right to travel interstate is a fundamental right.  All citizens enjoy a "fundamental right of free movement" and a "fundamental right to interstate travel." *Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997); *accord, State v. French*, 77 Haw. 222, 231 (App. 1994).

66. The Constitution of Hawaiʻi protects a fundamental individual right to freedom to travel interstate and intrastate.  Haw. Const. art. I § 2.

67. The Fifth Amendment and Fourteenth Amendment to the United States Constitution together enunciate and protect the federal right to due process of law as applicable to the several States.

68. The Constitution of Hawaiʻi enunciates and protects the fundamental individual right to due process, including but not limited to the right to due process prior to deprivation of the right of interstate and intrastate travel and the right of free movement.  Haw. Const. art. I § 5.

69. Defendant Governor's Ninth Supplementary Proclamation ("June 10 Supplement") violates the fundamental right to interstate travel in Section IV(A), where it declares the current version of the "Self-Quarantine Order," in its "Exhibit D" ("Rules Relating to Covid-19 Travel Quarantine"), and in Section IV(E) purports to make any person's non-compliance chargeable and punishable as a misdemeanor crime without proof of knowledge or intent.

70. The June 10 Supplement substantially violates the fundamental right to interstate travel by denying any individual entering any Hawaiian island, even an uninhabited island, the liberty to carry out the individual's purpose(s) for traveling to the island.

71.  The June 10 Supplement substantially violates the fundamental right to freedom of movement and interstate travel by denying any individual the right to travel to another Hawaiian island, even an uninhabited island.

72. The June 10 Supplement denies the rights to interstate travel, intrastate travel, and freedom of movement by imposing the costs of 14-day quarantine upon any person who does travel into Hawaiʻi or to any Hawaiian island, and by enforcing the 14-day quarantine by criminal misdemeanor prosecution and penalties.

73. By imposing a mandatory 14-day quarantine that amounts to house arrest of the traveling individual upon arrival in the Hawaiian island, without establishing the individual committed a crime, the June 10 Supplement denies the individual's basic human liberty without due process.

74. Neither the June 10 Supplement nor any of its predecessor proclamations and supplements provide even a rational basis to impose the Self-Quarantine Order (in its original or amended forms) and the "Rules Relating to Covid-19 Travel Quarantine" upon travelers arriving in the Hawaiian islands, in that: None of the proclamation documents supplies any evidence warranting even a suspicion that any given inbound traveler has any quantifiable likelihood of posing a threat of Covid-19 infection or contagion to anyone in the State of Hawaiʻi.

75. Neither the June 10 Supplement nor any of its predecessor proclamations and supplements provide sufficient evidence to establish a compelling state interest to justify the Self-Quarantine Order (in its original or amended forms) and the "Rules Relating to Covid-19 Travel Quarantine" upon travelers arriving in the Hawaiian islands, in that: None of the proclamation documents supplies any evidence warranting even a suspicion that any given inbound traveler has any quantifiable likelihood of posing a threat of Covid-19 infection or contagion to anyone in the State of Hawaiʻi.

75. Neither the June 10 Supplement nor any of its predecessor proclamations and supplements provide any finding or evidentiary showing that the Self-Quarantine Order (in its original or amended forms) and the "Rules Relating to Covid-19 Travel Quarantine" are narrowly tailored to achieve the stated goals, e.g., "to avert unmanageable strains on our healthcare system and other catastrophic impacts to the State" (June 10 Supplement, p.1).

76. Defendants and their agents and employees intend to enforce the above-alleged travel restrictions and quarantine mandates, and have in fact enforced them via the police and criminal prosecutions.  If Plaintiffs take any action even colorably a "violation" of the restrictions and mandates, Plaintiffs reasonably fear and expect criminal arrest and prosecution; their fears are therefore real, imminent, and based upon a strong likelihood.  *See* Hannah Simpson, "Hawaii

isn't messing around  when it comes to enforcing  tourist quarantines," *Washington Post*, May 20, 2020, accessible at  www.washingtonpost.com/travel/2020/05/20/hawaii-isnt-messing-around-when-it-comes-enforcing-tourist-quarantines/, and Madeline Holcombe, "New York tourist is arrested in Hawaii after posting beach pictures on Instagram," CNN, May 17, 2020, accessible at  www.cnn.com/2020/05/16/us/hawaii-arrest-coronavirus-trnd/index.html.

77. The June 10 Supplement and its predecessor proclamations, along with the prior and existing Executive Order(s), and Defendants' enforcement of each and all of these, unlawfully and unconstitutionally infringes on Plaintiffs' rights, thereby entitling Plaintiffs to the relief requested below, pursuant to 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION

### GOVERNOR'S PROCLAMATION IMPOSES BURDENS ON INTRASTATE TRAVEL THAT VIOLATE THE FUNDAMENTAL CONSTITUTIONAL RIGHTS TO TRAVEL AND TO DUE PROCESS OF LAW

78. Plaintiffs incorporate all previous paragraphs of this Amended Complaint as if fully stated herein.

79. Since statehood, Hawai'i law has identified, recognized, and protected the inalienable rights to the "enjoyment of life, liberty and the pursuit of happiness," which include the "freedom of movement."  *State v. Shigematsu*, 52 Haw. 604, 609-610 (1971), *citing* Haw. Const. art. I, § 2.  The right to freedom of movement is a necessary foundation of "our American way of life" and its "absence or denial characterizes confinement and imprisonment."  *Id.* at 610.

80. The freedom of movement on and among the Hawaiian Islands is a necessary foundation of the distinctly freedom and nature loving Hawaiian way of life.  *See* HRS § 5-7.5 (Aloha Spirit defined and encouraged in government).  "Freedom would be incomplete if it does not  include the right of [individuals] to move from place to place, to walk in the fields in the

country or on the streets of a city, to stand under open sky in a public park and enjoy the fresh air, to lie down on a public beach and enjoy a sunbath, to visit a friend in his home and enjoy an evening together, and the right to associate with others in the enjoyment of an avocation or a vocation." *Shigematsu,* 52 Haw. at 610.

81. The Constitution of the State of Hawai'i expressly enunciates and protects due process rights: "No person shall be deprived of life, liberty or property without due process of law[.]" Haw. Const. art. I, § 5.

82. The June 10 Supplement currently denies the rights to intrastate travel and freedom of movement by imposing the costs of 14-day quarantine upon any person who does travel into Hawai'i or to any Hawaiian island, and by enforcing the 14-day quarantine by criminal misdemeanor prosecution and penalties. By its current terms, however, the June 10 Supplement's intrastate travel restrictions expire on June 16, 2020.

83. By imposing a mandatory 14-day quarantine that amounts to house arrest of the traveling individual upon arrival in the Hawaiian island, without establishing the individual committed a crime, the June 10 Supplement denies the individual's basic human liberty without due process.

84. Neither the June 10 Supplement nor any of its predecessor proclamations and supplements provide even a rational basis to impose the Self-Quarantine Order (in its original or amended forms) and the "Rules Relating to Covid-19 Travel Quarantine" upon travelers to and from the Hawaiian islands, in that: None of the proclamation documents supplies any evidence warranting even a suspicion that any given inbound traveler between the Hawaiian islands has any quantifiable likelihood of posing a threat of Covid-19 infection or contagion to anyone in the State of Hawai'i.

85. Neither the June 10 Supplement nor any of its predecessor proclamations and supplements provide sufficient evidence to establish a compelling state interest to justify the Self-Quarantine Order (in its original or amended forms) and the "Rules Relating to Covid-19 Travel Quarantine" upon travelers to and from the Hawaiian islands, in that: None of the proclamation documents supplies any evidence warranting even a suspicion that any travelers to and from the Hawaiian islands has any quantifiable likelihood of posing a threat of Covid-19 infection or contagion to anyone in the State of Hawai'i.

86. Neither the June 10 Supplement nor any of its predecessor proclamations and supplements provide any finding or evidentiary showing that the Self-Quarantine Order (in its original or amended forms) and the "Rules Relating to Covid-19 Travel Quarantine" are narrowly tailored to achieve the stated goals, e.g., "to avert unmanageable strains on our healthcare system and other catastrophic impacts to the State" (June 10 Supplement, p.1).

87. Defendants and their agents and employees intend to enforce the above-alleged travel restrictions and quarantine mandates, and have in fact enforced them via the police and criminal prosecutions. If Plaintiffs take any action even colorably a "violation" of the restrictions and mandates, Plaintiffs reasonably fear and expect criminal arrest and prosecution; their fears are therefore real, imminent, and based upon a strong likelihood. *See* Hannah Simpson, "Hawaii isn't messing around  when it comes to enforcing  tourist quarantines," *Washington Post*, May 20, 2020, accessible at  www.washingtonpost.com/travel/2020/05/20/hawaii-isnt-messing-around-when-it-comes-enforcing-tourist-quarantines/, and Madeline Holcombe, "New York tourist is arrested in Hawaii after posting beach pictures on Instagram," CNN, May 17, 2020, accessible at  www.cnn.com/2020/05/16/us/hawaii-arrest-coronavirus-trnd/index.html.

88. The June 10 Supplement and its predecessor proclamations, along with the prior and existing Executive Order(s), and Defendants' enforcement of each and all of these, unlawfully and unconstitutionally infringes on Plaintiffs' rights, thereby entitling Plaintiffs to the relief requested below, pursuant to 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION

GOVERNOR'S PROCLAMATION'S BURDENS ON INTERSTATE AND INTRASTATE
TRAVEL ARE UNCONSTITUTIONALLY VOID FOR VAGUENESS

89. Plaintiffs incorporate all previous paragraphs of this Amended Complaint as if fully stated herein.

90. The history and sequence of Defendant Governor's proclamation documents presents overlapping, inconsistent and contradictory provisions. Each of the above-cited supplemental proclamations restates, amends but also reaffirms the prior proclamation document, resulting in a growing body of separate documents that requires a lawyer to assess what is or is not prohibited, restricted, permitted, permitted with restrictions, or punishable by criminal prosecution. With scant exception, none of the proclamation documents informs the reader, a lay person, which prior orders have been nullified, modified, or expanded, or how the new orders are supposed to be interpreted *vis a vis* prior expressions on the same subject matter. A person of everyday intelligence cannot decipher what the state of the Governor's declared "law" is at any given time.

91. As an example of the vagueness and ambiguity: Earlier supplementary proclamations imposed a stay-at-home order, but the June 10 Supplement does not contain that language. The June 10 Supplement purports to restate and restate the prior supplementary proclamations, but then gives vague, inconsistent, and ultimately unintelligible orders concerning what travel is permitted – omitting any guidance about the assumed background status of the "law." A person

of ordinary intelligence – even a lawyer – is hard pressed to know what the rules are and how they would be applied in any but the most obvious cases.

92.  As another specific example: The June 10 Supplement, Section III(E), purports to make it a misdemeanor crime to "intentionally or knowingly" violate any restriction or prohibition of activities outside a person's residence as described in Section III.  Section IV(F) purports to make it a misdemeanor crime to "intentionally, knowingly or recklessly" violate Travel Quarantine Rules.  Yet the "Rules Relating to Covid-19 Travel Quarantine" ("Exhibit D"), incorporated in Section IV(F), purports to make it a misdemeanor crime to violate said "Rules," without any proof of knowledge, intent or recklessness.  The prohibitions, restriction, and rules defined in the totality of Section III and Section IV overlap and produce conflicts in meaning, understanding, interpretation, and worst of all, in the potential criminal liability and penalties for violations.  As a result, the provisions in Section III and Section IV of the June 10 Supplement are so vague that persons of common intelligence must necessarily guess at the meaning and may differ as to their understanding of the applications of the provisions individually or taken as a whole.

93. Other provisions in the June 10 Supplement / Rules for Travel Quarantine are so vague that persons of common intelligence must necessarily guess at the meaning and may differ as to the application of each of the following provisions, among others, contained in those documents:

(a) The May 18 Supplement, Section III: included the order to stay at home or place of residence, including hotel rooms or condominium units – the June 10 Supplement does not mention the stay at home order, but authorizes specific kinds of travel, making the extent of the restrictions vague and confusing;

(b) Section III (B): reference to "travel for health and safety" is patently vague, ambiguous, and subject to private interpretations that vary depending upon perspective;

(c) Section III (B): references to permission for persons to "travel to engage in minimum basic operations," which despite some vague broad examples, is a provision so vague and ambiguous that it leaves ordinary people wondering – yet in fear of criminal prosecution for violations if they guess incorrectly;

(d) Section III (A):  declares which business may operate by reference to "Exhibit G," which is a colorful graph that provides little to no guidance to a person of common intelligence to know what qualifies so as to avoid a misdemeanor prosecution;

(e) Section III(A),(B) & (C): imposes requirements about engaging in "safe practices" and the like "to the fullest extent possible" – which is not a reasonableness standard, nor a published standard, but a vague, ambiguous, unknown, and therefore a both subjective and arbitrary standard, such than a person of common intelligence could never be expected to know the standard in advance or in any given application, yet would face criminal prosecution for an alleged violation based upon an outside person's *post hoc* evaluation; and

(f)  "Exhibit D," Travel Quarantine Rules, sections 2 & 4: impose the "period of self-quarantine" for anyone entering the State of Hawai'i, and imposes misdemeanor criminal penalties upon a self-quarantined person who "fails to remain within the confines of the quarantine location designated by the person" for the quarantine period, without providing any guidance about what constitutes "the confines" and without providing any rule of reason for a person to employ in order to comply with the quarantine but still carry out important life

activities within a reasonable distance from or in a reasonable proximity to the "designated quarantine location."

94. The above list of vague and/or otherwise unlawful or unconstitutional is set forth as examples.  Plaintiffs allege there are other vague, unlawful and/or otherwise unconstitutional provisions contained in the June 10 Supplement and its predecessor proclamations and exhibits, and Plaintiff reserves without limitation the right to elaborate upon them depending upon the facts developed in litigation, discovery, motions, and hearings.

95. Defendants and their agents and employees intend to enforce the above-alleged travel restrictions and quarantine mandates, and have in fact enforced them via the police and criminal prosecutions.  If Plaintiffs take any action even colorably a "violation" of the restrictions and mandates, Plaintiffs reasonably fear and expect criminal arrest and prosecution; their fears are therefore real, imminent, and based upon a strong likelihood.  *See* Hannah Simpson, "Hawaii isn't messing around  when it comes to enforcing  tourist quarantines," *Washington Post*, May 20, 2020, accessible at  www.washingtonpost.com/travel/2020/05/20/hawaii-isnt-messing-around-when-it-comes-enforcing-tourist-quarantines/; Madeline Holcombe, "New York tourist is arrested in Hawaii after posting beach pictures on Instagram," CNN, May 17, 2020, accessible at www.cnn.com/2020/05/16/us/hawaii-arrest-coronavirus-trnd/index.html; "Hawaii resident arrested in traveler quarantine violation," Associated Press, June 10, 2020, accessible at www.usatoday.com/story/travel/news/2020/06/10/hawaii-resident-arrested-traveler-quarantine-violation/5332455002/;  and "Hawaii is arresting tourists who don't abide by the state's quarantine rules," Associated Press, May 8, 2020, accessible at www.usatoday.com/story/travel/news/2020/05/08/coronavirus-hawaii-arresting-tourist-who-break-quarantine-rules/3098049001/.

96. The June 10 Supplement and its predecessor proclamations, along with the prior and existing Executive Order(s), and Defendants' enforcement of each and all of these, unlawfully and unconstitutionally infringes on Plaintiffs' rights, thereby entitling Plaintiffs to the relief requested below, pursuant to 42 U.S.C. §1983.

## FOURTH CAUSE OF ACTION

### GOVERNOR'S NINTH SUPPLEMENTARY PROCLAMATION EXCEEDS THE LEGISLATURE'S DELEGATED AUTHORITY AND IS UNCONSTITUTIONAL.

97. Plaintiffs incorporate all previous paragraphs of this Amended Complaint as if fully stated herein.

98. As alleged above, after the initial March 4 Proclamation, Defendant Governor issued "supplementary proclamations" and orders on March 16 (Supplementary), March 21 (Second Supplementary) to include "Rules Relating to Covid-19," March 21, 2020 ( Executive Order No. 502), March 23 (Third Supplementary), March 31 (Fourth Supplementary), April 16 (Fifth Supplementary), April 16 (Executive Order No. 20-05),  April 25 (Sixth Supplementary), May 5 (Seventh Supplementary), May 18 (Eighth Supplementary), and June 10 (Ninth Supplementary). Each of the Supplementary proclamations incorporated the previous initial proclamation and all supplementary proclamations by reference, and each extended the date of expiration.

99. The legislature of the State of Hawai'i holds the power to enact laws affecting all the people in Hawai'i.  Haw. Const. art. III § 1.

100. The Governor of the State of Hawai'i holds the power to execute the laws of the State of Hawai'i, but does not hold legislative power.  *See* Haw. Const. art. V.

101. The Governor of the State of Hawai'i does not hold an enumerated power in the Constitution of the State of Hawai'i to declare states of emergency, or to abridge the fundamental rights to liberty and property of persons present in Hawai'i, without the express authority of the legislature. *See* Haw. Const. art. V.

102. The legislature of the State of Hawai'i expressly conferred upon the Governor the limited power to declare an emergency and promulgate rules and regulations to facilitate the government response to such declared emergency.  *See* H.R.S. §§ 127A-2 and 127A-14. Included in that delegated authority is the provision permitting the State to arrest, prosecute and punish "violators" of emergency rules and regulations by misdemeanor penalties.  *See* H.R.S. § 127A-29.

103.  The express delegation of emergency authority limits the Governor's power to a period not to exceed 60 days.  H.R.S. § 127A-14(d).

104. Defendant Governor's initial Proclamation was issued on March 4, 2020.  Sixty days past March 4, is May 3, 2020.  Using the stratagem of issuing "supplemental" proclamations successively incorporating one another, the Ninth (June 10) Supplement extends the coverage of the initial and supplemental proclamations to July 31, 2020, which is 159 days past March 4.

105. None of the supplemental proclamations cite any authority, nor has any been found, to authorize apparently limitless numbers of "supplemental" proclamations and thereby circumvent the legislature's express 60-day limitation.

106. Defendant Governor's June 10 Supplement, and any preceding supplemental proclamation, which purports to extend its effect past May 3, 2020, is unconstitutional.

107. As alleged above, Plaintiffs have been and are suffering harms directly related to the continued application and enforcement of the June 10 Supplement.

108. Plaintiffs legitimately fear actual criminal law consequences if they violate, intentionally or otherwise, any provision declared in the June 10 Supplement.  Defendants, their agents and employees intend to enforce the June 10 Supplement has they have enforced those and prior supplement's provisions via the police and criminal prosecutions.  If Plaintiffs take any action even colorably a "violation" of the restrictions and mandates, Plaintiffs reasonably fear and expect criminal arrest and prosecution; their fears are therefore real, imminent, and based upon a strong likelihood.  See press reports above-cited to the Washington Post, CNN, and the Associated Press.

## FIFTH CAUSE OF ACTION

### GOVERNOR'S NINTH SUPPLEMENTARY PROCLAMATION IS UNCONSTITUTIONALLY VAGUE AND DEPRIVES PLAINTIFFS OF DUE PROCESS OF LAW

109. Plaintiffs incorporate all previous paragraphs of this Amended Complaint as if fully stated herein.

110. As set forth and alleged above in this Amended Complaint, the June 10 Supplement in three places declares the criminal penalties to be imposed for violations of the Supplement's orders:  Section III(E), Section IV(F), and "Exhibit D" (Travel Quarantine Rules).  These three provisions purporting to impose criminal penalties are vague and/or internally contradictory.

111. As set forth and alleged above in this Amended Complaint, Plaintiffs each have suffered and continue to suffer substantial harms due to the restrictions and prohibitions imposed by the June 10 Supplement (and its predecessors).

112. As set forth and alleged above in this Amended Complaint, Plaintiffs have a real fear and expectation of criminal prosecution if they violate any provision of the June 10 Supplement.  Plaintiffs' fears and expectations are exacerbated by the impossibility of knowing how the criminal penalty provisions will be construed, interpreted and applied to them in any given case.

113. The above-cited and other provisions in the June 10 Supplement / Rules for Travel Quarantine are so vague that persons of common intelligence must necessarily guess at the meaning and may differ as to the application of each of the various provisions contained in those documents.  *See, e.g.,* Paragraphs 91-94, *supra*.

114. The above quoted vague and/or otherwise unlawful or unconstitutional provisions are set forth to provide examples.  Plaintiffs allege there are other vague, unlawful and/or otherwise unconstitutional provisions contained in the June 10 Supplement and its predecessor proclamations and exhibits, and Plaintiff reserves without limitation the right to elaborate upon them depending upon the facts developed in litigation, discovery, motions, and hearings.

115. The June 10 Supplement and its predecessor proclamations, along with the prior and existing Executive Order(s), and Defendants' enforcement of each and all of these, unlawfully and unconstitutionally infringe on Plaintiffs' rights to liberty and property without due process of law, thereby entitling Plaintiffs to the relief requested below.  Haw. Const. art. I §§ 2,5.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court grant the following relief:

1. A declaratory judgment stating that the June 10 Supplement inclusive of its exhibits and any existing or predecessor documents it includes by reference, is unconstitutional, invalid, null, and void;

2. An injunction prohibiting Defendant Governor, Defendant Attorney General, and Defendant State of Hawaiʻi including all of its political entities, agents, and employees, from enforcing any provision of the June 10 Supplement in any way, whether by criminal, civil, or administrative procedures;

3. A declaratory judgment stating that the June 10 Supplement inclusive of its exhibits and any existing or predecessor documents it includes by reference, may be cited or otherwise employed as a source of law or evidence in any civil, administrative, or other legal or quasi-legal proceeding, but only as a defense to allegations of fault, misconduct, liability, or damages, and for no other purpose;

4. A declaratory judgment stating that the June 10 Supplement inclusive of its exhibits and any existing or predecessor documents it includes by reference, is invalid, null, and void as to:

(a) Section III, to the extent that it burdens, restricts or prohibits interstate travel;

(b) Section III, to the extent that it burdens, restricts or prohibits intrastate travel in, between, or among any of the islands comprising the State of Hawaiʻi;

(c) Section IV, to the extent that it burdens, restricts or prohibits interstate travel;

(d) Section IV, to the extent that it burdens, restricts or prohibits intrastate travel in, between, or among any of the islands comprising the State of Hawaiʻi;

(e) "Exhibit D" ("Rules Relating to Covid-19 Travel Quarantine") to the extent that it burdens, restricts or prohibits interstate travel;

(f) "Exhibit D" ("Rules Relating to Covid-19 Travel Quarantine") to the extent that it burdens, restricts or prohibits intrastate travel in, between, or among any of the islands comprising the State of Hawaiʻi; and

(f) Section III, Section IV, and "Exhibit D" to the extent any provision therein purports to authorize or declare the imposition of criminal liability for violating any provision of the June 10 Supplement that in any way relates to, implicates, or affects the right to interstate or intrastate travel;

5. A declaratory judgment stating that the June 10 Supplement inclusive of its exhibits and any existing or predecessor documents it includes by reference, shall not be cited or otherwise employed as a source of law or evidence in any civil, administrative, or other legal or quasi-legal proceeding, brought against any person;

6. A preliminary and a permanent injunction against the Defendants including but not limited to the State of Hawaiʻi, and its officers, agents, and employees, prohibiting any arrests, prosecutions, and convictions of any person for alleged violations of the June 10 Supplement inclusive of its exhibits, where the allegedly violated provision relates to, implicates, or affects the right to interstate or intrastate travel;

7. That this Court award Plaintiffs their attorneys' fees under 42 U.S.C. § 1988 and/or under any other applicable provision of law;

8. That this Court award Plaintiffs' their costs in this action; and

9. That this Court award any other relief it deems just and proper.

RESPECTFULLY SUBMITTED this 12th day of June, 2020.

ATTORNEYS FOR FREEDOM LAW FIRM


*/s/ Marc J. Victor*
Marc J. Victor
Attorney for Plaintiffs