ATTORNEYS FOR FREEDOM LAW FIRM
1003 Bishop St., Ste. 1260
Honolulu, HI 96813
Phone: (808) 647-2423
Fax (480) 857-0150
Marc J. Victor – Haw. Bar. No.  011090
Marc@AttorneysForFreedom.com
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

|  |  |
|---|---|
| FOR OUR RIGHTS, et al., | Civil No.  Civil No. 1:20-cv-00268 |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| DAVID IGE, in his official capacity as Governor of the State of Hawai'i, CLARE E. CONNORS, in her official capacity as Attorney General for the State of Hawai'i, and STATE OF HAWAI'I, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

MOTION FOR PRELIMINARY INJUNCTION .......................................................... 1

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

A PRELIMINARY INJUNCTION SHOULD ISSUE UNDER FED. R. CIV. P. 65 .... 2

   A.   Plaintiffs Have a Substantial Likelihood of Success on the Merits. ................................ 3

     1.   Federal and Hawaiʻi State Law Establish Fundamental Rights to Interstate Travel, Intrastate Travel, and Freedom of Movement. ................................................ 4

     2.   The Governor's Proclamation and Current Supplement Facially Violate the Fundamental Rights of Travel and Movement. ................................................ 6

     3.   The Governor's Proclamation and Current Supplement Violate Plaintiffs' Fundamental Rights of Travel and Movement. ................................................ 8

     4.   The Governor's Proclamation and Current Supplement Cannot Survive Strict Scrutiny Analysis Applied to Legislative Violations of Fundamental Constitutional Rights. ....... 9

     5.   The Governor's Current Supplement is Unconstitutional Under the Hawaiʻi Constitution. ................................................................................................ 10

   B.   Plaintiffs Will Suffer Irreparable Injury if Injunctive Relief is Not Granted. ............... 14

   C.   Interim Injunctive Relief Will Cause No Undue Harm to Defendants. ........................ 14

   D.   Injunctive Relief From the Wholesale Denial of Fundamental Rights to Travel and Freedom of Movement Will Serve the Public Interest. ................................................ 16

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Califano v. Aznavorian*, 439 U.S. 170 (1978) ............................................................... 5

*Close v. Sotheby's, Inc.*, 909 F.3d 1204 (9th Cir. 2018) ................................................ 14

*Déjà vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377 (6th Cir. 2001). ............................................................................................................. 15

*Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673 (1976) .................................................... 14

*Ex parte Arta*, 52 Cal. App. 380 (1921) .......................................................................... 7

*Ex parte Siebold*, 100 U.S. 371 (1879) ......................................................................... 14

*Fla. Waterworks Ass'n v. Pub. Serv. Comm'n*, 473 So. 2d 237 (Fla. App. 1985) ........ 13

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994) ... 16

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ................................................................... 5

*Jacobson v. Massachusetts*, 197 U.S. 11, 25 S. Ct. 358 (1905) ................................... 16

*Kent v. Dulles*, 357 U.S. 116 (1958) .......................................................................... 5, 6

*Latta v. Otter*, 19 F. Supp. 3d 1054 (D. Idaho 2014) ..................................................... 9

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ................................................. 14, 16

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010) ............................................ 16

*Norsworthy v. Beard*, 87 F. Supp. 3d 1164 (N.D. Cal. 2015) ....................................... 15

*Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997) ............................................. 4

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ............................................. 15

*Reno v. Flores*, 507 U.S. 292 (1993) ............................................................................. 9

*Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058 (C.D. Cal. 2015) .. 6

*Saenz v. Roe*, 526 U.S. 489, 119 S. Ct. 1518 (1999 ................................................. 4, 5

*Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002) ................... 16

*Shapiro v. Thompson*, 394 U.S. 618 (1969) .................................................................... 5

*Sierra Forest Legacy v. Rey*, 577 F.3d 1015 (9th Cir. 2009) ......................................... 3

*State v. Department of Industry, Labor and Human Relations*, 77 Wis. 2d 126, 252 N.W.2d 353 (1977) ................................................................................................... 13

*State v. French*, 77 Haw. 222 (App. 1994) ................................................................ 4

*State v. Shigematsu*, 52 Haw. 604 (1971) ............................................................ 5, 6

*Subcontractors Trade Ass'n v. Koch*, 62 N.Y.2d 422, 465 N.E.2d 840 (1984)............................ 13

*U.S. v. Guest*, 383 U.S. 747 (1966)........................................................................ 5

*United States v. Hockings*, 129 F.3d 1069 (9th Cir. 1997) ........................................... 8

*Winter v. NRDC, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008) ........................................... 3

*Wis. Legislature v. Palm*, 2020 WI 42 .............................................................. 11, 12

**Statutes**

H.R.S. § 127A-14(d)......................................................................................... 11, 13

H.R.S. § 5-7.5 ................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 65 ..................................................................... 1, 2

**Constitutional Provisions**

Haw. Const. (Preamble) ................................................................................... 12

Haw. Const. art. I § 1 ...................................................................................... 12

Haw. Const. art. I § 2 ...................................................................................... 5

Haw. Const. art. I § 5 ...................................................................................... 5

Haw. Const. art. III § 1 .................................................................................... 13

Haw. Const. art. V........................................................................................... 13

## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs, through counsel, hereby move this Court for a preliminary injunction requiring the Defendants, Governor David Ige and Attorney General Clare E. Connors, and all Defendants and their agencies and entities, not to enforce the Hawaiʻi Governor's Ninth Supplementary Proclamation Related To The Covid-19 Emergency and Executive Order No. 20-05, to the extent that either or both infringe or otherwise adversely affect Plaintiffs' fundamental rights to interstate travel, intrastate travel, and freedom of movement.  As explained below, a preliminary injunction is necessary to protect Plaintiffs' and other Hawaiʻi residents' constitutional rights while the parties brief a motion for preliminary injunction.  The concurrently-filed Amended Complaint alleges facts showing, *inter alia*, the Governor's Ninth Supplementary Proclamation violates Plaintiffs' fundamental rights under the Fifth and Fourteenth Amendments and is also unconstitutional under the Hawaiʻi Constitution, thereby rendering the Ninth Supplementary Proclamation null, void, and unenforceable.

## INTRODUCTION

There is something very wrong when a person faces criminal prosecution for simply standing on the beach in Kauaʻi.  Penalties for traveling state to state are the opposite of the American way of life.  Government orders, enforced by both police and citizen informants, that demand a healthy non-criminal person remain in a hotel room 24/7 for two weeks – cannot be acceptable in a free nation.

As set forth in the Plaintiffs' Amended Complaint concurrently filed and incorporated by reference here, Governor Ige, with Attorney General Connors' formal approval, signed and issued Hawaiʻi Governor's Ninth Supplementary Proclamation Related to The Covid-19

Emergency (the "June 10 Supplement"), in connection with Executive Order No. 20-05.  As alleged in Plaintiffs' Amended Complaint, the June 10 Supplement violates the constitutional rights of Plaintiffs and other similarly situated residents of Hawaiʻi to travel freely between the States, to travel within the islands of Hawaiʻi, and to due process of law in connection with the enforcement of the restrictions, prohibitions, and criminal penalties associated with the June 10 Supplements' effects upon the rights to travel.  Plaintiffs seek this preliminary injunction to protect Plaintiffs' and other Hawaiʻi residents' fundamental and constitutional rights while the issues are briefed more fully in a motion for declaratory relief and permanent injunction.

More generally, June 10 Supplement is unconstitutional under the Hawaiʻi Constitution. Under the authorizing Hawaiʻi statute, the Governor may maintain an emergency declaration for no more than 60 days.  Using the stratagem of successive "supplements," the Governor has extended the effective term of the emergency declaration to 159 days.  As an unlawful declaration exceeding lawful authority, the June 10 Supplement must be declared null and void.

## ARGUMENT

### A PRELIMINARY INJUNCTION SHOULD ISSUE UNDER
### FED. R. CIV. P. 65

Fed. R. Civ. P. 65 authorizes the issuance of a preliminary injunction to prevent irreparable harm to the movant.  In construing applications for preliminary injunctive relief, courts analyze four factors:

(1) likelihood of plaintiffs' success on the merits;

(2) likelihood of plaintiffs' suffering irreparable harm in the absence of preliminary relief;

(3) the balance of equities favoring the plaintiffs;

(4) the injunction's tending to serve the public interest.

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365 (2008); *see Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (same elements).

When analyzed, these four factors weigh in favor of issuing a preliminary injunction in this case while the constitutional issues are briefed on an expedited basis.

### A. Plaintiffs Have a Substantial Likelihood of Success on the Merits.

Plaintiffs have a substantial likelihood of success on their constitutional claims. Defendant Governor Ige issued a proclamation and several "supplements," with supporting executive orders, starting on March 4, 2020, and purporting to extend their effects now until July 31, 2020. The proclamation currently in effect is the June 10 Supplement, which amends and restates the initial March 4 Proclamation and all subsequent Supplements. By its terms both express and restated,[1] the June 10 Supplement:

> (a) orders all persons within the State of Hawai'i "to stay at home or in their place of residence," to include any hotel room or condominium;

> (b) prohibits any such persons from travel anywhere unless to an approved destination such as a business or other operation, or to leave the State;

> (c) imposes a mandatory "self-quarantine" of 14 days upon any person who enters Hawaii from another state;

> (d) imposes a mandatory "self-quarantine" of 14 days upon any person who enters one Hawaiian island from another Hawaiian island (with narrow exemptions related to health care or work on "federal critical infrastructure sectors";

---

[1] The June 10 Supplement purports to amend and restates prior supplemental proclamations without repealing prior provisions. *See* Amended Complaint, ¶¶ 54,58, 90-94 and its Exhibits 1-7,9.

(e) prohibits visiting any beach or public space, with narrow exceptions only vaguely defined, such as to "exercise";

(f) mandates any "host" of a dwelling must monitor all "guests" and "immediately report to law enforcement" any perceived violation of self-quarantine orders;

(g) threatens a criminal misdemeanor, arrest, prosecution, and penalties of prison time or fines for convictions based upon violations of the foregoing restrictions on the right to travel and the freedom of movement.

The Governor's orders, not based upon any legislative findings or judicial authority, expressly and directly infringe, restrict, and prohibit the right to interstate and intrastate travel, and the right to freedom of movement, without due process of law.

> **1.      Federal and Hawaiʻi State Law Establish Fundamental Rights to Interstate Travel, Intrastate Travel, and Freedom of Movement.**

It is well-established that the United States Constitution's Fourteenth Amendment's Privileges or Immunities Clause enshrines a "constitutional right to travel from one State to another." *Saenz v. Roe*, 526 U.S. 489, 498, 119 S. Ct. 1518 (1999 ).  The right prohibits laws that "directly impair the exercise of the right to free interstate movement." *Saenz*, 526 U.S. at 501.  The constitutional right to interstate travel is applicable to the state and local governments by virtue of its Fourteenth Amendment origin and basis, and by virtue of its having been "a necessary concomitant of the stronger Union the Constitution created." *Saenz*, 526 U.S. at 501(citation omitted).

The federal constitutional right to travel interstate is a fundamental right.  All citizens enjoy a "fundamental right of free movement" and a "fundamental right to interstate travel." *Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997); *accord, State v. French*, 77 Haw. 222, 231 (App. 1994).

The Constitution of Hawaiʻi protects a fundamental individual right to freedom to travel interstate and intrastate.  Haw. Const. art. I § 2.  Additionally, the Constitution of Hawaiʻi enunciates and protects the fundamental individual right to due process, including but not limited to the right to due process prior to deprivation of the right of interstate and intrastate travel and the right of free movement.  Haw. Const. art. I § 5.

The Supreme Court has unequivocally held the "constitutional right to travel from one State to another" is firmly embedded in this nation's jurisprudence.  *Saenz,* 526 U.S. at 498, (*citing U.S. v. Guest*, 383 U.S. 747, 757 (1966)).  "The right is so important that it is assertable against private interference as well as governmental action… a virtually unconditional personal right, guaranteed by the Constitution to us all." *Id., citing Shapiro v. Thompson*, 394 U.S. 618, 643 (1969) (Stewart, J. concurring)).  Indeed, "[t]he constitutional right of interstate travel is virtually unqualified." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978), citing *Guest*, 383 U.S. at 757-758; *Griffin v. Breckenridge*, 403 U.S. 88, 105-106 (1971)).  "[T]he constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position *fundamental* to the concept of our Federal Union." *Guest*, 383 U.S. at 748 n.1 (emphasis added).  Overarching, "[t]he right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958).

Since statehood, Hawaiʻi law has identified, recognized, and protected the inalienable rights to the "enjoyment of life, liberty and the pursuit of happiness," which include the "freedom of movement." *State v. Shigematsu*, 52 Haw. 604, 609-610 (1971), *citing* Haw. Const. art. I, § 2.  The right to freedom of movement is a necessary foundation of "our American way of life" and its "absence or denial characterizes confinement and imprisonment." *Id.* at 610.

5

The freedom of movement on and among the Hawaiian Islands is a necessary foundation of the distinctly freedom and nature loving Hawaiian way of life.  *See* H.R.S. § 5-7.5 (Aloha Spirit defined and encouraged in government).  "Freedom would be incomplete if it does not include the right of [individuals] to move from place to place, to walk in the fields in the country or on the streets of a city, to stand under open sky in a public park and enjoy the fresh air, to lie down on a public beach and enjoy a sunbath, to visit a friend in his home and enjoy an evening together, and the right to associate with others in the enjoyment of an avocation or a vocation." *Shigematsu,* 52 Haw. at 610.  This fundamental right dovetails with the "[f]reedom of movement across frontiers in either direction, and inside frontiers as well" that is "part of our [national] heritage."  *Kent,* 357 U.S. at 126.

> **2.    The Governor's Proclamation and Current Supplement Facially Violate the Fundamental Rights of Travel and Movement.**

Plaintiffs' Amended Complaint and this Motion establish the likelihood of success on the merits of the claims necessary to support a preliminary injunction where, as here, there are shown "serious questions going to the merits of the claims."  *Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1073-75 (C.D. Cal. 2015) (citations omitted).  As set forth in Plaintiffs' concurrently-filed Amended Complaint, and in the June 10 Supplement, the Governor's orders combine to expressly prohibit freedom of movement and any other travel not expressly authorized in the June 10 Supplement.  Likewise, the June 10 Supplement expressly imposes heavy restrictions on human liberty via the 14-day self-quarantine requirements upon persons who enter any Hawaiian island (even if uninhabited) from another American State, and upon persons who travel between any two Hawaiian Islands, with only narrow categories of mitigation.

Nothing in the June 10 Supplement or in its predecessors provides a sufficient ground to wholesale prohibit travel and movement of any Plaintiff and any other Hawai'i resident or visitor from another State.  The Governor's conclusory assertion of the existence of an "emergency," without any showing of the reality of said emergency in or affecting all of the islands of Hawai'i, is insufficient basis to deny a fundamental right to travel or movement.

Moreover, the prohibitions and restrictions imposed by the June 10 Supplement are not narrowly tailored to infringe the fundamental rights to travel and movement to achieve a clearly defined goal.  They are not even reasonably related to real risks posed by Covid-19 viral infection.

For example, the Supplement nowhere explains or justifies why a person may not leave her condo and walk across the street to get fresh air and watch the sunset.  There is no showing that such travel, such movement, poses any Covid-19 contagion risks to any human being on Earth.  There is no showing that healthy persons traveling from one island to another for brief family or business activities present such a contagion danger that they must be locked up in the destination residence for 14 days.  Furthermore, there is no showing that visitors from other American States present such a contagion danger that they must be likewise quarantined for 14-days.  The quarantine requirement, enforced by threatened misdemeanor prosecution and penalties, effectively demolishes all tourism and even business travel to Hawai'i.  All of these examples, both hypothetical and real, are endless – and the Supplement nowhere justifies the extreme breadth of the travel and movement restrictions, prohibitions and penalties imposed upon people showing no hint of exposure or disease.[2]

---

[2] "[A] mere suspicion [of a contagious disease], unsupported by facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine." *Ex parte Arta*, 52 Cal. App. 380, 383 (1921) (emphasis added).

The plain text of the June 10 Supplement and its predecessors discloses broad prohibitions and restrictions upon human liberty, the right to travel, and the freedom of movement.  In many instances the text is vague and ambiguous, leaving it up to citizens to try to figure out what is permitted and what is restricted or prohibited.  That vagueness means that enforcement of the Supplement's orders in the courts will turn upon novel or ad hoc findings that a charged defendant might never have predicted.  A law carrying criminal consequences "cannot be so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."  *United States v. Hockings*, 129 F.3d 1069, 1072 (9th Cir. 1997).

The Governor's Proclamation and supplements form a mass of documents that mutually "amend and restate" one another, creating a morass of regulations that carry over implicitly while making changes and expansions – even lawyers would struggle to parse out which rules apply or have been modified.  There is no way a non-lawyer, whether resident or visitor to the state, could be expected to know which of the previously-stated and currently-asserted rules apply and how to apply them.  The vagueness and overbreadth of the June 10 Supplement's prohibitions, restrictions, and penalties imposed upon travel and personal movement warrant judicially invalidating them.

### 3. The Governor's Proclamation and Current Supplement Violate Plaintiffs' Fundamental Rights of Travel and Movement.

Plaintiffs' concurrently-filed Amended Complaint includes the specific allegations of grave harms to physical well-being (physical therapy), emotional health (anxiety, depression, suicidal ideation), continued sobriety, family support especially in times of personal crisis, family travel and relationships, employment, small business enterprise, incomes, and financial conditions and futures – all directly or indirectly caused by the Governor's Proclamation and succeeding supplements as they impose prohibitions, restrictions, costs and other consequences

8

upon the right to interstate and intrastate travel and the freedom of movement of people in

Hawaiʻi, whether residents or visitors.  Please see Paragraphs 60-61 of the concurrently-filed

Amended Complaint, together with its attached exhibits as cited therein, for extended details of

each individual Plaintiff's harms due to deprivation of rights.

### 4. The Governor's Proclamation and Current Supplement Cannot Survive Strict Scrutiny Analysis Applied to Legislative Violations of Fundamental Constitutional Rights.

As shown above, the right to travel is a fundamental right.  Any government practice that

implicates fundamental rights is "subject to strict scrutiny, surviving only if narrowly tailored to

a compelling government interest."  *Latta v. Otter*, 19 F. Supp. 3d 1054, 1069 (D. Idaho 2014),

*citing Reno v. Flores*, 507 U.S. 292, 301-02 (1993).  The June 10 Supplement cannot survive

strict scrutiny.

On its face, the June 10 Supplement describes no compelling government interest served

by sweeping and burdensome violations of the fundamental rights.  The Supplement and its

predecessors rely upon Defendant Governor's opinion about the risks of Covid-19 pandemic,

itself based only vaguely upon data from outside Hawaiʻi and not shown to connect to anything

in Hawaiʻi.  As of June 10, 2020, the entire State of Hawaiʻi experienced only 17 deaths from

Covid-19 in the period March 4 to June 10.  Exhibit 9, p.1.  In the state's population of 1.4

million, the total death rate has been 0.001% -- about 1 person in 100,000.  For comparison, in

2018 there were 117 motor vehicle crash deaths in the State of Hawaiʻi – just under 10 per

month.[3]  In the three months the Proclamation and supplements were in effect, the expected

average number of auto deaths would be 30, equaling about 0.002% or 2 persons in 100,000.

---

[3] Data from U.S. Department of Transportation, presented at www.iihs.org/topics/fatality-statistics/detail/state-by-state

The Covid-19 fatality rate has been less than the expected auto crash death rate, a problem therefore not rising to a grave risk requiring the lockdown of the whole State.

The June 10 Supplement shows no trace of having been narrowly tailored to achieve the State's interest.  The Supplement imposes a blanket 14-day quarantines on interstate and intrastate travelers, without any regard for the likelihood of infection or contagion presented by the traveler or the environment into which the traveler is venturing. There is no reasonableness standard employed; instead, the Supplement uses vague and ambiguous terms to describe what is required, restricted, prohibited, and punishable.  *See* Amended Complaint at ¶¶ 90-94.

In practical, daily life, the broad prohibitions and restrictions are damaging the lives of real people.  *See* Amended Complaint and Exh. 8.  Plaintiffs are effectively barred from travel for any reason, to include visiting family and friends, and vital elements of their social life have evaporated.  Locked down and fearing criminal penalties for "violations" of the Governor's orders, cut off from their vocations, losing their incomes, retirement hopes, and financial futures, Plaintiffs are suffering anxiety, depression, hopelessness, frayed relationships, and in some cases suicidal ideation.  *See id.*  The Governor's series of orders are nowhere near "narrowly tailored" to advance a compelling state interest.

> **5.**    **The Governor's Current Supplement is Unconstitutional Under the Hawaiʻi Constitution.**

The Governor of Hawaiʻi does not have the power to declare an emergency, impose broad and sweeping curtailments of the people's liberty and property interests, and enforce them by criminal penalties – indefinitely – without express legislative authorization.  Yet that is precisely what he has done.

Through the emergency proclamation statute, the legislature conferred a limited power to declare an emergency and implement processes to address the emergency – but the Governor has

that power for only 60 days maximum.  H.R.S. § 127A-14(d).  The Governor's initial

Proclamation declaring the emergency commenced on March 4, 2020.  That emergency and all

of the Governor's actions could extend only through May 3, 2020.  By issuing several

"supplements," Defendant Governor attempted to circumvent the statutory maximum time.

Now, the Ninth Supplementary Proclamation, dated June 10, 2020, extends the emergency

declaration and the Governor's implementing orders through July 31, 2020 – *159 days afte*r the

Governor's initial Proclamation.  Amended Complaint Exh. 9.  Defendant Governor has cited no

authority empowering him to extend an emergency proclamation for 159 days, and none has

been found.

Just weeks ago, the Wisconsin supreme court addressed a situation analogous to the

instant case, and soundly rejected the state health services secretary Ms. Palm's claim of such

unlimited power.  In *Wis. Legislature v. Palm*, 2020 WI 42, Ms. Palm ordered all people within

Wisconsin to remain in their homes, not to travel, and to close all businesses that she declared

not "essential," imposing penalties for violators of imprisonment for 30 days, a $250 fine, or

both.  *Id.* at ¶1  The Wisconsin court declared its overarching logic:

> We do not conclude that Palm was without any power to act in the face of this
> pandemic. However, Palm must follow the law that is applicable to state-wide
> emergencies. We further conclude that Palm's order confining all people to their
> homes, forbidding travel and closing businesses exceeded the statutory authority
> of Wis. Stat. § 252.02 upon which Palm claims to rely.

*Id.* at ¶4.

To issue the emergency order, Ms. Palm was required to follow the state's statutory

procedures.  But under Wisconsin's authorizing statute, "An emergency rule ... 'remains in effect

only for 150 days' [], unless extended by the Legislature's Joint Committee for Review of

Administrative Rules.[]"  *Id.* at ¶29 (statute citations omitted).  Ms. Palm claimed emergency

power authority indefinitely without rulemaking.  *Id.* at ¶31 ("under Palm's theory, she can

'implement all emergency measures necessary to control communicable diseases' [], even at the

expense of fundamental liberties, without rulemaking"). The Wisconsin high court rejected the

unlimited power position:

> [W]e employ the constitutional-doubt principle. ... Palm points to statutes that she
> asserts give her broad authority to impose regulation; but it does not follow she
> can impose regulation without going through a process to give the people faith in
> the justness of the regulation. ...That interpretation is constitutionally suspect. We
> do not construe [the Wisconsin statute] as an "open-ended grant" of police powers
> to an [unelected cabinet secretary].

*Wis. Legislature v. Palm*, 2020 WI 42, ¶31

This portion of the *Palm* precedent should apply to hold Defendant Governor's Ninth

Supplement null and void.  Defendant Governor did not "go through the process," i.e., he did not

obtain the legislature's lawmaking approval, to extend all of his broad prohibitions, restrictions,

and compulsions upon all the people in Hawai'i for many weeks past the statutory 60-day

maximum period.  This Governor was not elected to legislate.  The usurpation of power by

Defendant Governor eviscerates the core of Hawaii's representative democracy.

As the *Palm* court observed: "The people consent to the Legislature making laws because

they have faith that the procedural hurdles required to pass legislation limit the ability of the

Legislature to infringe on their rights."  *Id.* at ¶32.  Like the people of Wisconsin, the people of

Hawai'i "reserve the right to control our destiny, to nurture the integrity of our people and

culture, and to preserve the quality of life that we desire. ... and reaffirm our belief in a

government of the people, by the people and for the people[.]"  Haw. Const. (Preamble).  It is a

matter of organic constitutional law: "All political power of this State is inherent in the people

and the responsibility for the exercise thereof rests with the people. All government is founded

on this authority."  Haw. Const. art. I § 1. Moreover, in Hawai'i:

> "The legislative power of the State shall be vested in a legislature, which shall consist of two houses, a senate and a house of representatives. Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States."

Haw. Const. art. III § 1.

The governor of Hawaiʻi does not have legislative power.  *See* Haw. Const. art. V.  Any power the governor has, beyond those expressed in the constitution, would be delegated by the legislature.  H.R.S. 127A-14(d) delegates emergency powers to the governor for a period of 60 days maximum.  The 60-day limit has a sound constitutional basis: the separation of powers.  As stated in *State v. Department of Industry, Labor and Human Relations*, 77 Wis. 2d 126, 135, 252 N.W.2d 353 (1977): "[B]road grants of legislative powers will be permitted where there are procedural and judicial safeguards against arbitrary, unreasonable or oppressive conduct of the agency."  *See Fla. Waterworks Ass'n v. Pub. Serv. Comm'n*, 473 So. 2d 237, 246 (Fla. App. 1985) (quoting same).  By extending his initial March 4 Proclamation past the statutory 60-day limit, Defendant Governor has arrogated to himself the power to legislate.  That self-arrogation of power is unconstitutional on its face.

This conclusion is supported in precedent where New York's high court observed: when a mayor had "gone beyond his function of" executing the express powers of that office, "[s]uch action constitutes an exercise of legislative power."  *Subcontractors Trade Ass'n v. Koch*, 62 N.Y.2d 422, 429, 465 N.E.2d 840 (1984) (citations omitted).  To exercise a power not already expressly conferred, "the legislature must specifically delegate that power to him and must provide adequate guidelines and standards for the implementation of that policy.  *Id.* (citations omitted).  As "[t]here has been no such specific legislative authority granted to the Mayor in this case," the challenged "executive action must be deemed an unlawful usurpation of the legislative function" and the executive order deemed unconstitutional.  *Id.*, 62 N.Y.2d at 426, 430.

13

### B.      Plaintiffs Will Suffer Irreparable Injury if Injunctive Relief is Not Granted.

As shown above, the rights to interstate travel, intrastate travel, and freedom of personal movement are fundamental rights under the federal and Hawai'i constitutions and precedents.  It is well established that deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), *quoting Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673 (1976).  Also as discussed above, the June 10 Supplement expressly and directly violates the rights to travel and movement without a shown compelling state interest in broadly denying these rights or denying these rights to these Plaintiffs.  Plaintiffs' loss of the fundamental rights is irreparable injury.

Moreover, every Plaintiff and person in Hawai'i faces potential criminal arrest and prosecution under the June 10 Supplement.  Under Hawai'i law, however, the June 10 Supplement is unlawful and unconstitutional. "An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment." *Ex parte Siebold*, 100 U.S. 371, 376-77 (1879), *cited as authority, Close v. Sotheby's, Inc*., 909 F.3d 1204, 1210 n.1 (9th Cir. 2018).

### C.      Interim Injunctive Relief Will Cause No Undue Harm to Defendants.

No undue harm to others will result from the protection of Plaintiffs' constitutional rights. The Defendants will doubtless argue that a preliminary injunction would harm the State's ability to address the "emergency" declared about the risk of COVID-19 viral infections among the residents of Hawai'i.  That argument would fail for at least two reasons.  Most importantly, "if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment."

*Déjà vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001). "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citation omitted). "Irreparable harm is presumed if plaintiffs are likely to succeed on the merits because *a deprivation of constitutional rights always constitutes irreparable harm*." *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1193 (N.D. Cal. 2015) (emphasis added; citations omitted).

Moreover, the Governor's Proclamation and supplements, up to and including the current June 10 Supplement, nowhere establish that interstate or intra-island travel or personal freedom of movement actual present any measurable risk of contagion, let alone pandemic. Quite the contrary. The Governor's March 16 Supplement stated there were 10 "cases of Covid-19" in the entire State of Hawaiʻi. Assuming the state's population is 1.4 million people, the known number of 10 symptomatic cases amounted to 0.0007% of the population. The June 10 Supplement reports 685 cases statewide, with 17 deaths statewide – amounting to 0.048% and 0.001%, respectively, of the state's population.

The purposes of the initial Proclamation have not changed through to the June 10 Supplement: "to avert unmanageable strains on our healthcare system and other catastrophic impacts to the State[.]" Based upon the Governor's own figures, there is no such strain on the healthcare system and no catastrophic impacts to the State (except for the widespread economic, social, educational, and emotional health harms caused by the Proclamation and supplements themselves).

It was incumbent upon the Defendants to explain how the statewide denial of the fundamental rights of travel and movement were needed to address an actual pandemic risk, and

how the draconian measures would actually succeed.  To date, Defendants have made so such

showing, and the Covid-19 data available do not come close to justifying a statewide lockdown.[4]

**D.      Injunctive Relief From the Wholesale Denial of Fundamental Rights to Travel and Freedom of Movement Will Serve the Public Interest.**

"When a constitutional violation is likely … the public interest militates in favor of

injunctive relief because it is always in the public interest to prevent violation of a party's

constitutional rights." *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010).  In

*Melendres,* 695 F.3d 990, the Ninth Circuit confirmed "it is always in the public interest to

prevent the violation of a party's constitutional rights." *Id.* at 1002, *citing Sammartano v. First*

*Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002) (*quoting G & V Lounge, Inc. v. Mich.*

*Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).

Defendant Governor has confirmed the State's intention to impose criminal penalties

upon persons who violate the emergency order.  Plaintiff Keikaika wrote to Governor Ige on

June 4, 2020, presenting her intent to travel and not abide by the self-quarantine; the Office of

---

[4] Defendants may attempt to cite *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S. Ct. 358 (1905), as authority supporting state authorities' using the police power to coerce a population in order to prevent deaths due to pandemic.  First to note: J*acobson* affirmed a mandatory vaccination program against the centuries-known killer smallpox, where there was clear information showing the efficacy of vaccines to prevent an individual from contracting small pox and thereby greatly eliminating deaths due to smallpox in the population.  *See id.*, 197 U.S. at 24-31 & n.1. *Jacobson* did not address forced quarantines and the denial of the rights of travel and freedom of movement that the June 10 Supplement imposes against people without known exposure and without symptoms or signs of infection. Notably, the death rates due to smallpox in *Jacobson's* historical examples were far higher in numbers and population percentages than the Governor's proclamations report for Covid-19 in Hawai'i.  Data in *Jacobson* included: " 'Dr. Buchanan, the medical officer of the London Government Board, reported [1881] as the result of statistics that the smallpox death rate among adult persons vaccinated was 90 to a million; whereas among those unvaccinated it was 3,350 to a million; whereas among vaccinated children under 5 years of age, 42 1/2 per million; whereas among unvaccinated children of the same age it was 5,950 per million.' *Hardway's Essentials of Vaccination* (1882)." *Jacobson,* 197 U.S. at 31 n.1. Mathematically: the smallpox death rate among unvaccinated adults was 0.3% -- Hawaii's Covid-19 virus death rate to date is 0.001%. (300 times lower).

the Governor responded within a day via an email emphasizing that criminal penalties would be

applied to her if she violated the emergency orders.  *See* Amended Complaint, ¶55(F).

Every person in Hawaiʻi, whether a resident or visitor, faces a potential arrest,

prosecution, and conviction for a violation of the June 10 Supplement and related provisions

imposed by Defendant Governor.  The fear and expectation of State enforcement is real and

indeed likely.  If Plaintiffs or other persons in Hawaiʻi take any action even colorably a

"violation" of the restrictions and mandates, Plaintiffs' fear and expectation of criminal arrest

and prosecution is therefore real, imminent, and based upon a strong likelihood.  *See* Hannah

Simpson, "Hawaii isn't messing around  when it comes to enforcing  tourist quarantines,"

*Washington Post*, May 20, 2020, accessible at

[www.washingtonpost.com/travel/2020/05/20/hawaii-isnt-messing-around-when-it-comes-enforcing-tourist-quarantines/](www.washingtonpost.com/travel/2020/05/20/hawaii-isnt-messing-around-when-it-comes-enforcing-tourist-quarantines/); Madeline Holcombe, "New York tourist is arrested in Hawaii

after posting beach pictures on Instagram," CNN, May 17, 2020, accessible at

[www.cnn.com/2020/05/16/us/hawaii-arrest-coronavirus-trnd/index.html](www.cnn.com/2020/05/16/us/hawaii-arrest-coronavirus-trnd/index.html); "Hawaii resident

arrested in traveler quarantine violation," Associated Press, June 10, 2020, accessible at

[www.usatoday.com/story/travel/news/2020/06/10/hawaii-resident-arrested-traveler-quarantine-violation/5332455002/](www.usatoday.com/story/travel/news/2020/06/10/hawaii-resident-arrested-traveler-quarantine-violation/5332455002/);  and "Hawaii is arresting tourists who don't abide by the state's

quarantine rules," Associated Press, May 8, 2020, accessible at

[www.usatoday.com/story/travel/news/2020/05/08/coronavirus-hawaii-arresting-tourist-who-break-quarantine-rules/3098049001/](www.usatoday.com/story/travel/news/2020/05/08/coronavirus-hawaii-arresting-tourist-who-break-quarantine-rules/3098049001/).

Granting a temporary restraining order in this case will serve the public interest of

preventing the violation of the constitutional rights of every resident, and every visitor, in

Hawaiʻi.

**CONCLUSION**

Regardless of the intentions behind the Governor's Proclamation and Supplements' broad prohibitions, restrictions and penalties imposed upon interstate and intrastate travel and movement, the resulting wholesale violations of every person's rights in Hawai'i is simply unconstitutional and unlawful.  For all of these reasons, Plaintiffs respectfully request that this Court grant a preliminary injunction enjoining the Defendants from enforcing any portion of the June 10 Supplement, or at minimum, enjoining Defendants from enforcing the self-quarantine provisions and the restrictions upon interstate and intrastate travel and movement while the constitutional issues are more fully briefed.

RESPECTFULLY SUBMITTED this 12th day of June, 2020.

ATTORNEYS FOR FREEDOM LAW FIRM


*/s/ Marc J. Victor*
Marc J. Victor
Attorney for Plaintiffs